■ Jimmy Littlejohn, Appellant, v State of New York, Respondent. (Claim No. 59965.) — Appeal from a judgment in favor of the State, entered August 27, 1980, upon a decision of the Court of Claims (Koreman, J.). The claim here is based in medical malpractice for the alleged improper medical treatment received by claimant while he was an inmate at the Great Meadow Correctional Facility at Comstock, New York. Claimant entered that facility on October 3, 1973, and on October 29, 1973 went on sick call because of a head cold, watering eyes and a stuffy, running nose. One of the two physicians employed by the State at that facility examined claimant and diagnosed his condition as conjunctivitis resulting from a generalized infection, and he prescribed an ointment for external application and a form of penicillin as an antibiotic. Claimant had taken penicillin in 1964 with no ill effects or reaction. On the following day, the condition worsened and claimant returned to sick call where he was examined by the other State physician whose diagnosis was similar, except the condition appeared more severe, and ampicillin, a form of penicillin, but with a wider range of effectiveness, was prescribed, along with hot compresses and eye patches. The first physician also saw claimant on this date and prescribed stronger doses of penicillin because of his deteriorated condition. On October 31, 1973, the second physician found the conjunctivitis less inflamed, but also found a type of rash and blisters over a large area of the claimant's body, including inflammation of the palms of his hands and soles of his feet. Suspecting a reaction to penicillin, the physician discontinued its use and prescribed Benadryl, an antihistamine. A blood culture was taken and sent to the Glens Falls Hospital to determine if claimant's condition was scarlet fever. Before the results were ascertained, however, and on November 1, 1973, claimant's condition had worsened. The pigmentation of the rash with blister formation had increased; there was a diffuse ulceration and purulence of oral mucosa, fever and other symptons. Claimant was then diagnosed at the correctional facility as suffering from a form of Erythema Multiforme, and was immediately transferred to the Glens Falls Hospital where he was diagnosed as suffering from Stevens-Johnson Syndrome, a relatively uncommon and severe type of Erythema Multiforme. He was hospitalized until about Decem-

ber 5, 1973. Claimant contends that this lengthy hospitalization and the scars to his eyes and body could have been prevented by a proper diagnosis of his condition on October 29, 1973. The opinion of his medical expert offered at trial stated that the Stevens-Johnson Syndrome should have been recognized by the State doctors on the first sick call and that administering penicillin to such condition was medically improper and could only cause an aggravation of his condition. This opinion assumes that claimant's symptoms were so manifest on the first sick call that his disease could or should have been properly diagnosed in the exercise of reasonable medical skill and judgment. However, as pointed out by the trial court, the salient symptoms of such disease were lacking on the first day and even on the second day. In fact, claimant's expert admitted that he would be speculating if he said the claimant showed signs of Stevens-Johnson Syndrome on October 29. Stevens-Johnson Syndrome is not common and its origin is unclear. It is an acute inflammatory disease marked by a variety of eruptions appearing on different areas of the body. In many respects, it is similar to an allergic reaction, such as a reaction to penicillin. Claimant's expert admitted that in New York City he saw only about two or three such cases a year. Given that claimant first sought medical attention on October 29, complaining only of a head cold, and was found suffering from conjunctivitis on October 30, and that the first indication of any rash or blisters was on October 31, and that on November 1 he was properly diagnosed by one of the prison's doctors and was immediately transferred to the Glens Falls Hospital, the finding of the trial court that claimant had not sustained his burden of showing malpractice on the part of the State was proper and must be affirmed. When medical malpractice involves patient treatment, three component duties are owed by the physician to the patient: (1) the duty to possess the requisite knowledge and skill such as is possessed by the average member of the medical possession; (2) a duty to exercise ordinary and reasonable care in the application of such professional knowledge and skill; and (3) the duty to use his best judgment in the application of this knowledge and skill (*Pike v Honsinger*, 155 NY 201, 209-210). Applying this standard to the facts as outlined above, it is clear that the State doctors, who were engaged in the general practice of medicine in the Glens Falls area, were not guilty of a breach of any of the three duties as found by the trial court, and such finding of the trial court should not be disturbed unless its conclusion could not be reached by any fair interpretation of the evidence (*Hale v State of New York*, 53 AD2d 1025; *Collins v Wilson*, 40 AD2d 750, 751). An analysis of claimant's evidence, which was the only evidence offered at the trial, sustains the trial court's well-reasoned decision of nonliability on the part of the State. Accordingly, the judgment should be affirmed. Judgment affirmed, without costs. Main, J. P., Casey, Yesawich, Jr., Weiss and Levine, JJ., concur.